UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN D. CORP,

                    Petitioner,

v.                                      Case No. 3:07-cv-652-J-34TEM

SEC., FLA. DEPT. OF CORR.,
et al.,

                    Respondents.

_____

**ORDER**

**I. Status**

Petitioner John D. Corp, who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on July 12, 2007, pursuant to the mailbox rule. Petitioner challenges a 2000 state court (Duval County, Florida) judgment of conviction for first degree murder on the following grounds: (1) trial counsel was ineffective for failing to investigate and advance the defense of involuntary intoxication; (2) trial counsel was ineffective for failing to object or file a motion in limine to limit the excessive presentation of gruesome photographs; (3) trial counsel was ineffective for failing to object to the reliability of the State's ballistics expert (Peter Panzica Lardizabal) and for failing to

present a defense expert to counter the prejudicial testimony of Lardizabal; and (4) trial counsel was ineffective for failing to request a special jury instruction on involuntary intoxication.

Respondents have submitted a memorandum in opposition to the Petition.  See Respondents' Answer in Response to Order to Show Cause (Response) (Doc. #13).[1]  On July 31, 2007, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #4), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner submitted a brief in reply on June 4, 2008.  See Petitioner's Reply/Traverse to Respondents' Response to Petition for Writ of Habeas Corpus (Reply) (Doc. #21).  This case is ripe for review.

## II. State Court Procedural History

On April 1, 1999, John David Corp was charged in Duval County, Florida, with first degree murder.  Resp. Ex. A at 9-11, Indictment.  At the conclusion of the trial, a jury found Corp guilty of first degree murder.  Id. at 349, Verdict; Resp. Ex. B, Transcript of the Trial Proceedings (Tr.) at 982.  The court adjudged him guilty in accordance with the verdict and sentenced him to life imprisonment.  Resp. Ex. A at 355-60, Judgment.

On appeal, Petitioner, through counsel, filed a brief, in which he argued that the trial judge erred in denying the motion

---

[1] The Court will refer to Respondents' exhibits as "Resp. Ex."

2

for judgment of acquittal as to the element of premeditation because the State failed to rebut the overwhelming evidence that Corp was unable to form a premeditated intent based on his clinical depression, alcohol and drug abuse and dissociative experience at the time of the shooting. Resp. Ex. C. The State filed an Answer Brief. See Resp. Ex. D. On February 6, 2002, the appellate court affirmed Corp's conviction and sentence per curiam. Corp v. State, 805 So.2d 1107 (Fla. 1st DCA 2002); Resp. Ex. E. The mandate issued on February 22, 2002. Resp. Ex. F.

On January 23, 2003, Petitioner filed a pro se motion for post conviction relief (Rule 3.850 motion) pursuant to Fla. R. Crim. P. 3.850, raising fourteen[2] ineffective assistance of counsel claims, not including the sub-claims, and one claim of police misconduct. Resp. Ex. G at 1-108.[3] Petitioner filed a motion to supplement and/or amend the Rule 3.850 motion (first supplemental 3.850 motion) on February 2, 2004, raising additional ineffectiveness claims based on: (1) counsel's failure to fully investigate and present evidence and expert testimony that Corp was under the influence of Zoloft, which affected his ability to premeditate the

---

[2] In the table of contents, Corp lists sub-claims a through m; however, he set forth sub-claims a through n in the argument section. See Resp. Ex. G at 10-12, 53-103.

[3] While the Rule 3.850 motion was pending, Petitioner filed a pro se petition for writ of habeas corpus in the appellate court on September 23, 2003, raising claims of ineffective assistance of appellate counsel. Resp. Ex. H. On November 21, 2003, the appellate court denied the petition per curiam. Resp. Ex. I.

murder; (2) counsel's failure to limit the presentation of gruesome photographs of the victim, which inflamed the jury; (3) counsel's failure to object to the reliability of the State's ballistics expert and failure to secure an expert to counter the State's expert; (4) counsel's failure to properly preserve for review the court's denial of his motion for judgment of acquittal; (5) counsel's opening the door to the admission of testimony by Dr. Krop which undermined Corp's credibility; (6) counsel's failure to request a jury instruction on involuntary intoxication; and (7) the cumulative effect of counsel's errors. _Id_. at 109-62. On October 26, 2004, Petitioner filed a second supplemental 3.850 motion, raising ground eight: counsel was ineffective for conceding Corp's guilt during the voir dire proceedings without first consulting with Corp. _Id_. at 163-70.

Concluding that the first supplemental 3.850 motion was "facially insufficient as a matter of law" for Corp's failure to include an oath in accordance with Fla. R. Crim. P. 3.850(c), the trial court, on January 12, 2006, did not address the claims raised in that supplemental motion. _Id_. at 526-27. Thus, addressing only the claims raised in the original Rule 3.850 motion and the second supplemental 3.850 motion, the court denied those motions. _Id_. at 526-47. Petitioner filed a motion for rehearing on January 20, 2006, _id_. at 664-701, which the trial court denied on April 21, 2006. _Id_. at 705.

4

Petitioner appealed the denial, see id. at 707-08, and filed a brief, arguing that the trial court erred by summarily denying the first supplemental motion as facially insufficient without addressing the merits of the claims presented, see Resp. Ex. J. The State filed a notice that it would not file an answer brief. Resp. Ex. K.  On March 1, 2007, the appellate court affirmed the denial per curiam.  See Corp v. State, 954 So.2d 29 (Fla. 1st DCA 2007); Resp. Ex. L.  The mandate issued on May 3, 2007.  Resp. Ex. M.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 4-5.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development,"

Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.
denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be
conducted.

## V.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of
1996, Pub.L. 104-132, 110 Stat. 1214 (AEDPA), the review "is
'greatly circumscribed and highly deferential to the state courts.'
Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart
v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication[4]
> resulted in a decision that was: "(1) . . .
> contrary to, or involved an unreasonable[5]
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or (2) . . . based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding."   28 U.S.C. § 2254(d);

---

[4] For a state court's resolution of a claim to be an
adjudication on the merits, so that the state court's determination
will be entitled to deference for purposes of federal habeas corpus
review under AEDPA, all that is required is a rejection of the
claim on the merits, not an opinion that explains the state court's
rationale for such a ruling.   Wright v. Sec'y for the Dep't of
Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S.
906 (2003).

[5] "The question under AEDPA is not whether a federal court
believes the state court's determination was incorrect but whether
that determination was unreasonable - a substantially higher
threshold." Schriro, 550 U.S. at 473 (citing Williams v. Taylor,
529 U.S. 362, 410 (2000)).

> Marquard, 429 F.3d at 1303.[6]   The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision.  See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)."  Schriro, 550 U.S. at 473-74.  This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The

---

[6] Marquard v. Sec'y, Dep't of Corr., 429 F.3d 1278 (11th Cir. 2005), cert. denied, 547 U.S. 1181 (2006).

Eleventh Circuit has captured the essence of an ineffectiveness claim:

>        The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. <u>Id</u>. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir. 2007) (per curiam). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

>        The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher

> threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct.
> 1933. And, because the <u>Strickland</u> standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see</u> <u>also</u>

<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In

addition to the deference to counsel's performance mandated by

<u>Strickland</u>, the AEDPA adds another layer of deference--this one to

a state court's decision--when we are considering whether to grant

federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner claims that trial counsel was ineffective because

he failed to investigate and advance the defense of involuntary

intoxication. <u>See</u> Petition at 6-6B. Respondents contend that

Petitioner's claim for relief is procedurally barred. <u>See</u> Response

at 7-9. As acknowledged by the parties, Petitioner raised this

claim in his first supplemental 3.850 motion. Resp. Ex. G at 114-

30. Since the motion did not contain an oath, the state court

found:

> The Defendant's Supplemental Motion for
> Post-Conviction Relief filed on February 5,
> 2004, is facially insufficient as a matter of

9

                law.   Fla. R. Crim. P. 3.850(c); <u>Groover v.</u>
                <u>State</u>, [703 So.2d 1035] (Fla. 1997); <u>Schofield</u>
                <u>v. State</u>, 710 So.2d 169 (Fla. 1st DCA 1998);
                <u>Pavey v. State</u>, 720 So.2d 563 (Fla. 2d DCA
                1998).[7]   Accordingly, the claims raised in
                the Supplemental Motion shall not be addressed
                in this Order.

<u>Id</u>. at 526-27.

      Within eight days[8] of the state court's decision, Petitioner, in an attempt to cure the oath deficiency, <u>see</u> <u>id</u>. at 692, filed a motion for rehearing on January 20, 2006.  <u>Id</u>. at 664-701.  The court denied the motion for rehearing without explanation as to whether it was based on procedural reasons or on the merits.  <u>Id</u>. at 705.  While acknowledging that Petitioner attempted to cure the oath error, <u>see</u> Response at 8, Respondents argue that it appears that the trial court denied the motion for rehearing because Petitioner also presented new arguments in support of each ground for relief, thus declining to address the merits of those claims. <u>See</u> <u>id</u>. at 9 n.8 ("The motion for rehearing was not merely a re-submission of the amended motion for postconviction relief.").

---

      [7] Florida Rule of Criminal Procedure 3.850 requires that a post conviction motion be "under oath," and the cases cited by the state court stand for the proposition that a post conviction motion without an oath is facially insufficient, and therefore the post conviction court should dismiss without prejudice to petitioner's right to refile the motion with a proper oath.

      [8] Florida Rule of Criminal Procedure 3.850(g) provides that a movant may file a motion for rehearing of any order denying a motion under Rule 3.850 within fifteen days of the date of service of the order.

On appeal, see id. at 707-08, Petitioner filed a brief, arguing that the trial court erred by summarily rejecting the claims raised in his first supplemental motion as facially insufficient without addressing the merits of those claims, see Resp. Ex. J. The State did not file an answer brief, and the appellate court affirmed the denial per curiam. Since the basis of the trial court's denial of the motion for rehearing is not clear, this Court finds that Respondents' procedural default argument is unavailing. Therefore, this Court will address the merits of the claim.

As ground one now before this Court, Petitioner claims that Randall Erler (defense counsel) was ineffective based upon his failure to investigate and present evidence that Corp was under the influence of Zoloft at the time of the murder. Petitioner alleges that he had been taking Zoloft "irregularly (only when he felt he needed it)" and had not been warned by Dr. Gary Bernard of the serious side effects which could occur, particularly when taken in combination with alcohol. Petition at 6B. He states that Dr. Bernard had diagnosed him with major depression in May of 1997 and had prescribed three hundred milligrams of Zoloft per day. Id. at 6A. He argues:

> If counsel had obtained another qualified
> psychiatric expert knowledgeable on the
> subject of involuntary intoxication, the
> expert could have offered testimony that Mr.
> Corp was temporarily rendered legally insane
> at the time he committed the murder of Melissa

> Rodriguez.   Furthermore,   the   expert   witness
> would   have   testified   that   Mr.   Corp   could   not
> tell right from wrong at the time he committed
> the   murder,   thus   meeting   Florida's   test   for
> insanity   and   completely   relieving   Mr.   Corp   of
> all   criminal   responsibility   for   his   actions
> because of his involuntary intoxication.

Id. at 6B.

In   evaluating   the   performance   prong   of   the   Strickland
ineffectiveness   inquiry,   the   Court   recognizes   that   there   is   a
strong   presumption   in   favor   of   competence.     The   inquiry   is
"whether, in light of all the circumstances, the identified acts or
omissions were outside the wide range of professionally competent
assistance."   Strickland,   466   U.S.   at   690.     "[H]indsight   is
discounted by pegging adequacy to 'counsel's perspective at the
time'   .   .   .   and   by   giving   a   'heavy   measure   of   deference   to
counsel's judgments.'"   Rompilla v. Beard, 545 U.S. 374, 381 (2005)
(citations   omitted).     Thus,   Petitioner   must   establish   that   no
competent attorney would have taken the action that counsel, here,
chose.   United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir.
2003).

At   the   time   Corp   committed   the   murder   on   March   16,   1999,
voluntary   intoxication   was   a   defense   available   to   negate   the
specific intent to commit the offense.   Pooler v. State, 980 So.2d
460,   464   n.3   (Fla.   2008)   (citing   Gardner   v.   State,   480   So.2d   91
(Fla. 1985)), cert. denied, 129 S.Ct. 255 (2008).   However, the law
changed in 1999 when Florida Statutes section 775.051 abolished the

voluntary intoxication defense for offenses committed after its effective date of October 1, 1999.[9]  See Ivanovic v. McNeil, No. 08-62068-CIV, 2010 WL 520601, at *13 n.14 (S.D. Fla. Feb. 10, 2010); see also Fla. Std. Jury Instr. (Crim.), § 3.6(d), "Voluntary Intoxication" (given only for offenses occurring before October 1, 1999).  The statute provided:

> Voluntary intoxication resulting from the consumption, injection, or other use of alcohol or other controlled substance as described in chapter 893 is not a defense to any offense proscribed by law.  Evidence of a defendant's voluntary intoxication is not admissible to show that the defendant lacked the specific intent to commit an offense and is not admissible to show that the defendant was insane at the time of the offense, **except when the consumption, injection, or use of a controlled substance under chapter 893 was pursuant to a lawful prescription issued to the defendant by a practitioner as defined in s. 893.02.**

Fla. Stat. § 775.051 (1999) (emphasis added).  Thus, the statute contained an exception that applies "when the consumption, injection, or use of a controlled substance under chapter 893 was pursuant to a lawful prescription issued to the defendant by a practitioner as defined in s. 893.02."  Id.  This "exception is essentially a codification of the involuntary intoxication defense previously acknowledged" by Florida's Fourth District Court of Appeal.  Montero v. State, 996 So.2d 888, 891 (Fla. 4th DCA 2008)

---

[9] Corp committed the murder on March 16, 1999, see Resp. Ex. A at 9-11, Indictment, and his trial was in July of 2000, see Tr.

13

(per curiam), _rev_. _denied_, 15 So.3d 581 (Fla. 2009) (citation omitted); _see_ _Cobb v. State_, 884 So.2d 437, 438 (Fla. 1st DCA 2004) (per curiam) ("The Legislature expressly limited the use of an intoxication defense to those circumstance[s] where the defendant's lack of specific intent or insanity is attributable to the use of a prescription medicine 'pursuant to a lawful prescription.'").

Here, Respondents argue that involuntary intoxication is not an established defense in Florida.  _See_ Response at 10.  However, Florida's Fourth District Court of Appeal has consistently recognized the defense of involuntary intoxication.  _See_ _Montero_, 996 So.2d 888; _Lucherini v. State_, 932 So.2d 521 (Fla. 4th DCA 2006); _Brancaccio v. State_, 698 So.2d 597 (Fla. 4th DCA 1997), _cert_. _denied_, 534 U.S. 1022 (2001); _Boswell v. State_, 610 So.2d 670 (Fla. 4th DCA 1992).  Additionally, relying upon _Brancaccio_ and Florida Statutes section 775.051, other Florida courts followed the Fourth District Court of Appeal's lead.  _See_ _Stimus v. State_, 995 So.2d 1149, 1150-51 (Fla. 5th DCA 2008); _Sluyter v. State_, 941 So.2d 1178, 1180 (Fla. 2nd DCA 2006); _Cobb_, 884 So.2d at 439; _Miller v. State_, 805 So.2d 885, 887 (Fla. 2nd DCA 2001).

In _Mora v. State_, 814 So.2d 322 (Fla. 2002), the Florida Supreme Court considered a claim that the trial court had erroneously refused to give a jury instruction on involuntary intoxication at the petitioner's trial in 1997.  The petitioner's argument that he was entitled to an involuntary intoxication jury

14

instruction was based on what the court described as "a line of cases from the Fourth District recognizing an involuntary intoxication defense." <u>Id</u>. at 329 (citations omitted). Assuming, without deciding, that the defense of involuntary intoxication existed in Florida, the court ruled that Mora was not entitled to such a jury instruction since there was no evidence suggesting that he was under the influence of any gases or drugs at the time of the shootings. <u>Id</u>. at 330. The court specifically stated: "In so deciding, we do not need to reach the issue of whether the defense of involuntary intoxication exists in Florida." <u>Id</u>.; <u>see</u> <u>Vaivada v. State</u>, 870 So.2d 197, 198 (Fla. 1st DCA 2004) (per curiam) ("We decline to address the issue of whether the defense of involuntary intoxication exists under Florida law[.]") (citations omitted).[10]

Accordingly, as a preliminary matter, it is not clear that the defense of involuntary intoxication existed at the time of Corp's trial in July of 2000. While such a defense is supported by case law in the state circuit courts, in 2002, the Florida Supreme Court expressly declined to consider whether the defense existed under Florida law. Nevertheless, in addressing the merits of Petitioner's claim for relief, this Court will assume that

---

[10] Moreover, the Florida Standard Jury Instructions in Criminal Cases has "reserved" a section for an involuntary intoxication defense instruction, but none currently exists. <u>See</u> Fla. Std. Jury Instr. (Crim.), § 3.6(e).

involuntary intoxication was an available potential defense at the time of Corp's trial.

Petitioner argues that his trial "centered on his ability to premeditate the murder of his girlfriend, Melissa Rodriguez." Petition at 6A. Indeed, in the opening statement, defense counsel informed the jury that premeditation was "the key to this case." Tr. at 220. Premeditation may be inferred based on circumstantial evidence such as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide as committed, and the nature and manner of the wounds inflicted. See Miller v. State, 770 So.2d 1144, 1148 (Fla. 2000) (citations omitted).

At the trial, the following evidence was presented. Corp shot Ms. Rodriguez five times in the face with a .38 caliber revolver. Tr. at 276-77, 313-14. One shot was made with the weapon touching Ms. Rodriguez's forehead, id. at 315, and the others were between eight to twelve inches away from her face, id. at 318. The trajectory of the bullets was inconsistent with the weapon and Ms. Rodriguez being in one place while Corp fired the shots; "[s]omebody moved, either the shooter or the victim." Id. Additionally, Officer Lardizabal, a crime laboratory analyst assigned to the firearm and toolmark section of the Florida Department of Law Enforcement, testified regarding the type of

revolver used by Corp and the effect of firing five successive
shots at a target with all the shots in a small area:

> It certainly would require deliberate
> action to bring the gun back into alignment
> with the relative target after each shot. The
> firearm will not just simply stay in place.
> It will move some, if not considerably, and so
> a conscious effort will have to be made to
> bring it back into alignment. Otherwise the
> gun will continue to move up with each
> successive shot so you have to return the
> firearm from recoil back to your intended
> target, if you want to reproduce an event.

Id. at 562.

Further, the evidence depicted previous difficulties between
the parties sufficient to support a finding of premeditation.
Detective Reddish testified that Petitioner had told him "this had
been building up for quite a while." Id. at 364. Reddish stated
that Corp had told him that he and Ms. Rodriguez had argued over a
co-worker (later identified as James Scott Lipham) with whom
Petitioner believed Ms. Rodriguez was flirting, which had severely
upset and enraged him. Id. at 365, 370. Lipham testified that
Corp wanted him to leave the house, stating, "I'm going to get my
gun." Id. at 426-27. And, less than thirty minutes later, Corp
shot Ms. Rodriguez five times in the face.

With respect to Corp's alcohol and drug consumption on the day
of the murder, police officers, who had responded to the crime
scene, testified that Corp was coherent, appropriately followed
their commands, appeared to understand what was occurring, did not

slur his words, did not stagger and did not smell of alcohol.  Id.
at 240-44, 254-55, 260.  Officer Norton repeated Corp's statements
for the jury:  "I'm sorry.  I should have shot myself with the gun.
I'm getting the death penalty.  I'm dead.  Let me die."  Id. at
261.  Norton recalled that, while enroute to the police station
that night, Corp commented on his driving, stating that he was
following too closely, and then made the statement: "When someone
keeps f—ing with you, you have to handle it this way, right?"  Id.
at 264.  Based on his experience with DUI arrests, Norton testified
that Corp was not severely intoxicated that night.  Id. at 265.

Additionally, Detective Reddish, who interviewed Corp that
evening, testified that while Corp told him he had been drinking
beer and rum and had smoked a small amount of marijuana that night,
he did not appear to be under the influence of drugs or alcohol.
Id. at 361, 386-87.  Reddish stated that Corp told him that the
only drug that he was under the influence of was a small amount of
marijuana, but that he had not taken any prescription drugs.  Id.
at 387.  Reddish testified that Corp never told him that he was
taking prescription medication.  Id. at 411.  While describing Corp
as visibly upset and crying during the interview, Reddish noted he
was "very cooperative" and able to answer questions coherently.
Id. at 363-64, 381, 384, 412-13.  When asked during the interview
about mental illness, Corp told Reddish that he was not suffering
from any type of mental illness.  Id. at 364.

18

James Scott Lipham, Corp's friend and co-worker, testified that, on the day of the murder, he had stopped by the house that Corp shared with his girlfriend (Ms. Melissa Rodriguez) for ten or fifteen minutes and saw Corp drink two beers. Id. at 421, 432. Later, at approximately 8:30 p.m. that same evening, he went back to the house and saw Melissa and Corp. Id. at 422. Lipham estimated that, on a scale of one to ten with ten being severely intoxicated, Corp was a six; however, he was able to talk to him and was able to understand him. Id. at 423-24.

Lipham recalled that Melissa was in the kitchen cooking when he arrived. Id. at 424. During the visit, Lipham heard Melissa and Corp in the kitchen talking loudly; he also heard "a little bumping" and then heard Melissa say, "Scott, come get your boy out of here." Id. at 425-26. In response to Melissa's request, Lipham entered the kitchen and escorted Corp out of the kitchen. Id. at 426. At that point, Corp asked Lipham if he was ready to leave. Id. at 427, 444. According to Lipham, Corp commented that he was going to get his gun, and Melissa responded: "John, leave that thing alone." Id. After a few more minutes, Corp asked Lipham, "Are you about done with that beer yet?" Id. Annoyed at another indication that Corp wanted him to leave, Lipham prepared to leave. Id. at 428.

During the second visit with Corp and Melissa, Lipham had one beer and then left the house within ten to fifteen minutes. Id. at

19

429-30.  Although Corp wanted him to leave the house, Lipham stated that, during the visit, Corp was not negative or aggressive towards him and no one seemed angry.  Id. at 439, 445-46.  Acknowledging that Corp's sudden request for Lipham to leave the house was uncharacteristic, id. at 446, Lipham testified that he did not flirt with Melissa and did not have any type of sex with her that night.[11]  Id. at 430, 448.  Lipham noted that she had not taken her panties or pants off in front of him.  Id. at 431, 447.  Lipham found out the next morning at work that Corp had killed Melissa.  Id. at 432.  He recalled that Corp had been taking antidepressants, such as Prozac and Zoloft, but that he had stopped taking the medication; he did not specify when Corp had stopped taking the medication.  Id. at 433-34.

Dr. Krop, who testified for the defense, testified about Corp's alcohol and drug use on the day of the murder:

> Specifically regarding the incident, [Corp] indicated that he had been drinking. After he got to his house he said it was his day off and that he had several shots of rum chased by beer.  He said that he thought he had about ten to 12 shots of rum followed by an unknown quantity of beer.  He also told me that he took three hundred milligrams Zol[o]ft.  Zol[o]ft is an antidepressant that had been prescribed by his doctor from the Premiere Family Care.  I don't remember the name of the doctor, but I know from looking at

---

[11]  In the opening statement, defense counsel described the shooting as "a crime of passion" sparked by Corp's seeing Melissa "naked from the waist down" in the living room with Lipham.  Tr. at 227-29.

> those records that I saw later that he was
> diagnosed with major depression in May of '97
> so he was prescribed Zol[o]ft.  He had been
> taking that medication close to two years at
> the time this incident happened and he had
> said that - and I don't remember whether he
> told me at that session or later that
> unfortunately **he didn't take the medication on
> a reliable basis, that he used it sometimes
> excessively for what he called recreational
> purposes and then sometimes he didn't take it
> at all.  But on the day in question, he said
> he took three hundred milligrams Zol[o]ft.**

Id. at 591-92 (emphasis added).  Dr. Krop also noted that, in the

third session, Corp told him that he had taken two Zoloft as

opposed to three Zoloft.  Id. at 622.  Regarding Corp's mental

state, Dr. Krop concluded:

> My opinion as to his mental state was that as
> a result of his depression, alcohol, use of
> Zol[o]ft, and the highly charged emotional
> state that he was in that his capacity to form
> the intent to commit this crime was
> significantly impaired.  That is he was not
> thinking rationally, his judgment was
> impaired, his thought processes were
> compromised, relating to the various
> diagnostic entities that I have referred to.

Id. at 629.  However, Dr. Krop acknowledged that Corp's Duval

County Jail medical records indicated that his last use of Zoloft

was several months ago.  Id. at 650-52.  Dr. Krop explained:

> I saw in his medical records the person who is
> prescribing Zol[o]ft for him had indicated he
> was not taking it on a consistent or reliable
> basis and I believe he either told me or
> someone else that he had used it
> recreationally and not the way it's supposed
> to be used . . . .

Id. at 653.  In evaluating the effect of Zoloft in combination with alcohol, Dr. Krop stated that Zoloft "would contribute to the increased effects of the alcohol."  Id. at 687.

Testifying in his own defense at trial, Petitioner was able to recount the vivid details of the day of the murder.  Id. at 752-60. Petitioner testified that he had been prescribed Zoloft, but did not take it on a regular basis.  Id. at 719.  He stated that, on the day of the murder, he started drinking at 3:00 in the afternoon and was drinking beer and rum and had taken two Zoloft.  Id. at 743, 747, 752.  When Lipham arrived, they smoked marijuana.  Id. at 761.

Since Florida's Fourth District Court of Appeal had recognized the defense of involuntary intoxication and the Florida Supreme Court had not ignored its existence, defense counsel could have argued the defense at Corp's trial in July of 2000.  However, the use of the involuntary intoxication defense was limited to those circumstances where the defendant's lack of specific intent was attributable to the use of a prescription medicine pursuant to a lawful prescription and taken as prescribed.  See Cobb, 884 So.2d at 438-39.  While conceding that he had been taking Zoloft irregularly and only when he felt he needed it, Corp testified at the trial that he had taken two Zoloft on the day of the murder. On the other hand, his close friend Lipham testified Corp had stopped taking the medication, id. at 433-34; Detective Reddish

22

stated that Corp had told him that he was not taking prescription drugs, id. at 387, 411; Corp's medical records indicated that his last use of Zoloft had been several months prior to the murder, id. at 650-52; and Dr. Krop testified that Corp "was not taking it on a consistent or reliable basis . . . ." Id. at 653.   Thus, there was conflicting evidence regarding whether he was under the influence of Zoloft on the day of the murder.   However, the evidence showed, without contradiction, that Corp had not been taking it "as prescribed."   Thus, defense counsel was not deficient for failing to present evidence that Corp was under the influence of Zoloft at the time of the murder when the facts showed Corp was not following the prescription at the time of the murder.   Corp testified that he did not take the Zoloft on a regular basis, and Dr. Krop's testimony supported that testimony.   Furthermore, other testimony reflected that Corp had stopped taking Zoloft several months prior to the murder and was not taking any prescription medications at that time.   The facts did not support the defense.

Moreover, Petitioner has failed to show that counsel's decision to rely on Dr. Krop's testimony that Petitioner's capacity to form intent at the time of the murder was "significantly impaired" was not so unreasonable as to demonstrate deficient performance.   Corp's claim that counsel should have called another psychiatric expert (to testify that Corp could not tell right from wrong at the time he committed the murder, thus meeting Florida's

23

test for insanity and completely relieving Mr. Corp of all criminal responsibility for his actions because of his involuntary intoxication) is also flawed. Based on the evidence presented at the trial, Corp was coherent and could tell right from wrong at the time of the murder. The 911 tape and his statements to Detective Reddish reflect that he knew he had wrongly killed Ms. Rodriguez and was aware that he would be punished for such an act. Tr. at 499-510. His actions after the murder, which he also recalled in a detailed fashion, reflect that he knew he had committed an illegal act.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. As previously set forth, the evidence at the trial that Petitioner premeditated the murder was overwhelming. While defense counsel presented a defense of _voluntary_ intoxication based on Corp's consumption of alcohol and/or drugs, the jury did not find from the evidence that he was so intoxicated from the use of alcohol and/or drugs as to be incapable of forming the premeditated design to kill. _See_ _id_. at 957-58. Since the use of the involuntary intoxication defense was limited to evidence of Corp's lack of specific intent being attributable to the use of Zoloft (a

24

prescription medicine pursuant to a lawful prescription) <u>taken</u> <u>as</u>
<u>prescribed</u>, Petitioner has not shown a reasonable probability that
the jury would have found that he was so intoxicated from the use
of Zoloft as to be incapable of forming the premeditation for the
murder. Accordingly, Corp's ineffectiveness claim is without merit
since Petitioner has neither shown deficient performance nor
resulting prejudice.

## B. Ground Two

Petitioner claims that defense counsel was ineffective based
upon his failure to object or file a motion in limine to limit the
excessive presentation of gruesome photographs. <u>See</u> Petition at 7.
He alleges that thirty gruesome photographs were presented to the
jury without objection. <u>Id</u>. at 7A. As acknowledged by the
parties, Petitioner raised this claim in his Rule 3.850 motion, <u>see</u>
Resp. Ex. G at 60-62, and in the first supplemental 3.850 motion,
<u>see</u> id. at 131-35. Respondents contend that Petitioner's claim for
relief is procedurally barred, <u>see</u> Response at 17-18; however,
this Court opines that Petitioner has sufficiently exhausted the
claim. <u>See</u> Section VII. A., Ground One.

After identifying the two-prong <u>Strickland</u> ineffectiveness
test as the controlling law, the trial court denied the Rule 3.850
motion with respect to this issue, stating in pertinent part:

> In ground one subclaim (b), the Defendant
> contends that counsel rendered ineffective
> assistance by failing to object to the
> introduction of thirty photographs of the

deceased victim.  The Defendant claims that, except for the first photograph, the photographs had no legitimate purpose.  The Defendant correctly states that the trial court struck photograph Exhibits Nine and Eleven, but claims counsel then introduced them for no reason as Defense Exhibit Ten.[12] The Defendant states that the trial court did conduct a lengthy colloquy regarding the photographs, and the Defendant avers that the trial court made the determination that the State erred in introducing the photographs and, by implication, that defense counsel was ineffective.  This Court finds that even assuming counsel should have objected to the introduction of the photographs, the Defendant has failed to establish prejudice to his case. Strickland, 466 U.S. 668.  The trial court conducted a lengthy sidebar regarding the photographs in question, at which time the State gave the relevance for each picture. (Exhibit "E," pages 320-322.)  Based on the inquiry the trial court struck only two of the photographs.  (Exhibit "E," pages 320-322.) The Defendant does not contend that the trial court should have struck more than the two photographs.  While the Defendant does claim that only one of the photographs was relevant, it is clear that the trial court did not agree.  The Defendant cannot establish that the jury was so prejudiced by two additional photographs that, but for counsel's failure to object prior to their introduction into evidence or by introducing them as evidence himself, the outcome of his trial would have been different.  Strickland, 466 U.S. 668.

Resp. Ex. G at 533.

As this ineffectiveness claim was rejected on the merits by the state trial court, there is a qualifying state court decision. Thus, this claim will be addressed applying the deferential

---

[12] Corp agreed with counsel's strategy of introducing one photograph of the victim, as defense exhibit ten.  Tr. at 771, 774.

standard for federal court review of state court adjudications required by AEDPA.  As such, the Court must consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."  Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is without merit.  Indeed, Corp mischaracterizes the trial court's discussion of the photographs. The record reflects that the prosecutor introduced thirty-two photographs, and the witness briefly explained the contents of each photograph.  Tr. at 272-75, 284-96.  The trial judge addressed the issue, stating:

> There never was an objection from the defense
> so I didn't feel it was necessary to look at

> them then, but I have looked at them since.
> It appears to me that there are some
> duplications, some unnecessary duplications in
> some of these photographs.
>
> And the main concern I've got, because we
> all know what the case law says about multiple
> bloody photographs, and, unfortunately, the
> case law now says a Judge doesn't just sit
> here and act as a neutral, detached magistrate
> as we used to, but now we've got a duty to get
> in here and take part when things like this
> come up, unfortunately.  It does appear -- I
> know the jury didn't take much time looking at
> these because there wasn't a whole lot of
> publishing.

Id. at 320-21.  Accordingly, the trial judge asked the prosecutor

to explain the relevance of exhibits seven through ten and to try

to limit those to one or two exhibits, id. at 321, as well as

exhibit eleven, id. at 327.[13]  After the prosecutor's explanation,

id. at 323-30, the trial judge decided that exhibit nine was

unnecessarily duplicative.  Id. at 328-33.  Later, defense counsel

introduced the photograph as defense exhibit ten, id. at 766, 771,

and Corp affirmed that he agreed with counsel's trial strategy.

Id. at 774.  The State then requested admission of exhibit nine,

id. at 841-43, which the trial court granted, stating:

---

[13] Exhibit seven showed the victim's position when she was
found as well as the pants right next to her; eight, the victim in
the chair with blood spattering on the wall above the chair and the
toy next to her as well as showing the open door; nine, an overhead
view of the victim showing the blood spatter on the wall behind
her, on the toy in front of the chair she was in and leading across
the room; ten, a close-up shot of the victim and better view of the
pants; and eleven, blood spattering on the wall above the victim's
chair and off to the right side of the chair.  Tr. at 286-87, 323-
28.

> The defense has introduced virtually the exact same photograph except that it's cropped. It's just as gory and gruesome as the State's photograph. There's some relevance here. The state will be allowed to introduce the photograph, though I kept it out earlier sua sponte, without defense objection.

<u>Id</u>. at 844.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. The record reflects that the trial judge dutifully examined the photographs and inquired as to the relevance of each photograph. Indeed, the trial judge was concerned about unnecessary duplication despite the absence of any objection, but ultimately ruled the photographs to be admissible. Corp's ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice.

### C. Ground Three

Petitioner claims that trial counsel was ineffective because he failed to object to the reliability of the State's ballistics expert and failed to present a defense expert to counter his prejudicial testimony. <u>See</u> Petition at 9. He argues that counsel could have called an expert to establish that it was possible that Corp could have blindly pulled the trigger when he shot the victim.

<u>Id</u>. at 9A.  As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion, <u>see</u> Resp. Ex. G at 70-73, and in the first supplemental 3.850 motion, <u>see</u> id. at 136-41. Respondents contend that Petitioner's claim for relief is procedurally barred, <u>see</u> Response at 22; however, this Court opines that Petitioner has sufficiently exhausted the claim.  <u>See</u> Section VII. A., Ground One.

After identifying the two-prong <u>Strickland</u> ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In ground one subclaim (d), the Defendant contends that counsel rendered ineffective assistance by failing to call an expert witness to impeach the testimony of the State's firearm expert.  The Defendant avers counsel should have called an expert to establish that it was possible that the Defendant was "shooting blindly."  The Defendant claims this would have countered the State's Florida Department of Law Enforcement's expert opinion to the contrary. The Defendant attempts to attack the Florida Department of Law Enforcement's expert's opinion that, in order to fire the weapon, a full release of the trigger was required. (Exhibit "D," pages 317-318.)[14]   The Defendant does not set out any possible expert or evidence that could have been used to contradict this expert testimony.  While the Defendant does state that "[l]ong accepted forensic methods including ballistics have been successfully challenged as 'junk science,'" the Defendant does not state how counsel could have challenged the way the gun was manufactured to work.   (Defendant's

---

[14] <u>See</u> Tr. at 559.

Memorandum at 44.)  Contrary to case law set
out by the Defendant, his claim is not about
ballistics, it is about how the gun he used
could be fired.  Accordingly, the Defendant
has failed to establish error on the part of
counsel.  Strickland, 466 U.S. 668.  Further,
because the Defendant failed to set out that
an expert exists that could have rebutted the
State's expert, or set out proposed testimony
that an independent firearm expert could have
given, this claim is insufficiently pled.
Nelson v. State, 875 So.2d 579, 583 (Fla.
2004); Bryant v. State, 901 So.2d 810 (Fla.
2005).  Moreover, the Defendant agreed with
counsel's decision to only call as defense
witnesses the Defendant, Dr. Krop, Mr. Erler
[sic] and the Defendant's mother.  (Exhibit
"D," pages 479-480.)  Accordingly, this claim
is without merit.

In ground one subclaim (d), the Defendant
also claims that counsel rendered ineffective
assistance by failing to object to the expert
and not subjecting the expert to voir dire.
The Defendant states that the Daubert [v.
Merrell Dow Pharmaceuticals, Inc., 509 U.S.
579 (1993)] standard was not met.  The
Defendant argues that counsel should have
objected because the State failed to establish
the soundness and reliability of the expert
testimony offered.  However, the Defendant
does not establish that the expert witness's
testimony was not sound and reliable.  As for
the contention that his testimony was based
merely on his experience and opinion, this
Court points out that an expert witness is
allowed to testify based on his experience and
opinion.  See Section 90.702, Florida Statutes
(1999).  Further, as Florida does not follow
Daubert, this claim must fail.  Spann v.
State, 857 So.2d 845, 852 (Fla. 2003).

Resp. Ex. G at 533-34 (footnote omitted).

This ineffectiveness claim was rejected on the merits by the

state trial court.  As there is a qualifying state court decision,

31

this claim will be addressed applying the deferential standard for
federal court review of state court adjudications required by
AEDPA.  After a thorough review of the record and the applicable
law, the Court concludes that the state court's adjudication of
this claim was not contrary to clearly established federal law and
did not involve an unreasonable application of clearly established
federal law.  Nor was it based on an unreasonable determination of
the facts in light of the evidence presented in the state court
proceedings.  Thus, Petitioner is not entitled to relief on the
basis of this claim.

Even assuming that the state court's adjudication of this
claim is not entitled to deference under AEDPA, Petitioner's claim
is without merit.  Indeed, the issue in dispute at the trial was
Corp's capacity to premeditate the murder of Ms. Rodriguez.  Corp's
position was that he snapped under the influence of alcohol and
drugs when he found Ms. Rodriguez in a sexually compromising
position with his friend and co-worker, and in a rage, blindly
emptied the bullets within his gun on Ms. Rodriguez.  The State
called Officer Lardizabal, a firearms expert, <u>see</u> id. at 547, who
testified about the firearm Corp had used to commit the murder.
Petitioner contends that the officer's testimony regarding the
operator's intended actions based on the pounds of trigger pull was
"junk science."  However, Petitioner has not shown that no
competent attorney would have taken the action that his counsel

chose.  On review, counsel's performance was not deficient.  He
cannot be faulted for failing to object to the reliability of
Officer Lardizabal's testimony or for failing to present a defense
expert to counter the officer's testimony.  Based on his experience
and training, see id. at 543-47, Officer Lardizabal was qualified
to testify as an expert witness in the field of firearm
identification and examinations.  Indeed, he had testified in
Florida as an expert in firearm identification and examinations in
approximately one hundred and twenty-five times.  Id. at 546-47.
Moreover, Corp agreed with counsel's decision to call specific
defense witnesses.  Id. at 479-80.

    And, even assuming arguendo deficient performance by defense
counsel, Petitioner has not shown the resulting prejudice.  With
the overwhelming evidence of guilt presented by the State at the
trial, Petitioner has not shown that a reasonable probability
exists that the outcome of the case would have been different even
if defense counsel had challenged the reliability of Officer
Lardizabal or had presented a defense expert to counter the
officer's testimony.  For these reasons, this ineffectiveness claim
is without merit in that Petitioner has not shown both deficient
performance and resulting prejudice.

### D. Ground Four

    Petitioner claims that trial counsel was ineffective because
he failed to request a special jury instruction on involuntary

intoxication.  <u>See</u> Petition at 10.  As acknowledged by the parties,
Petitioner raised this claim in his first supplemental 3.850
motion.   Resp. Ex. G at 152-57.   Respondents contend that
Petitioner's claim for relief is procedurally barred, <u>see</u> Response
at 25; however, this Court opines that Petitioner has sufficiently
exhausted the claim.  <u>See</u> Section VII. A., Ground One.

Indeed, "a defendant is entitled to have a jury instruction on
any valid defense supported by the evidence." <u>Mora</u>, 814 So.2d at
330.  Thus, defense counsel could have requested a special jury
instruction on the involuntary intoxication defense.  However, as
previously stated with respect to ground one, the use of the
involuntary intoxication defense and the corresponding special jury
instruction was limited to those circumstances where the
defendant's lack of specific intent was attributable to the use of
a prescription medicine pursuant to a lawful prescription and <u>taken
as prescribed</u>.  Thus, defense counsel was not deficient for failing
to request the special jury instruction when the facts did not
fully support the defense.

As pointed out by Dr. Krop, Corp's medical records showed that
Corp was not taking Zoloft on a consistent and reliable basis and
that Corp's last use of Zoloft had been several months ago.
Further, Petitioner admitted that he took Zoloft recreationally and
on an as needed basis.  Even in the Petition, Corp alleges that he
took Zoloft "irregularly" and increased or decreased the dosage in

34

attempts to counter side effects.  Petition at 10A.  Moreover, his close friend Lipham testified Corp had stopped taking the medication, Tr. at 433-34, and Detective Reddish stated that Corp had told him that he was not taking prescription drugs, id. at 387, 411.

Intoxication would only be considered involuntary where it results from medicine which has been prescribed "and taken as prescribed."  Brancaccio, 698 So.2d at 599 (citation omitted). Further, while there was evidence of alcohol and drug consumption on the day of the murder, those who had observed Petitioner prior to the murder as well as immediately thereafter testified that he was able to successfully conduct himself and was not acting irrationally and incoherently.  See Mora, 814 So.2d at 330 ("As there was no evidentiary nexus, [petitioner] was not entitled to an involuntary intoxication instruction.").  Thus, there was evidence that Petitioner was not so intoxicated as to be unable to know right from wrong or form the specific intent to commit the murder. See Brancaccio v. State, 27 So.3d 739, 741 (Fla. 4th DCA 2010) (stating that the defendant has "the burden to prove that this involuntary intoxication rendered him unable to understand what he was doing and to understand the consequences of his actions, or if he did understand, that he was unable to know that his actions were wrong") (citation omitted).

35

Here, counsel pursued a defense of voluntary intoxication, and the trial judge instructed the jury on voluntary intoxication. <u>See</u> Tr. at 957-58. With the overwhelming evidence of premeditation, the jury chose to believe that Petitioner had deliberately shot Ms. Rodriguez and had not blindly pulled the trigger in a rage caused by the alcohol and drugs consumed on that day. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown any resulting prejudice. Thus, this ineffectiveness claim is without merit in that Petitioner has not shown both deficient performance and the resulting prejudice.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim[s] fail[]." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009). Any claims not specifically addressed by this Court are found to be without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability <br> Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of

appealability is not warranted.   This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. §2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.   See Slack, 529 U.S. at 484.   However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of August, 2010.

**MARCIA MORALES HOWARD**
United States District Judge

sc 8/31
c:
John David Corp
Ass't Attorney General (Winokur)